Defendant has appealed to this Court from a judgment condemning him to pay $250.00 to plaintiff as receiver of the Southern Underwriters.
We find that the opinion of the learned Judge of the District Court clearly and correctly disposes of the points at issue and we adopt and quote same as the opinion of this Court:
"Plaintiff, as the receiver of the Southern Underwriters, sues the defendant for $250.00, on the following cause of action. The Southern Underwriters was a reciprocal insurance exchange of which W. S. Andrus was a subscriber for a policy of workmen's compensation. We might say that the Southern Underwriters was a mutual insurance company, where the subscribers were at once the insured and the insurers of all other subscribers. W. S. Andrus, by written application, became insured and as a part of the contract agreed:
" '8. Our Attorney-in-Fact is authorized to issue Contracts whenever and however applied for by us, which Contracts and Renewals thereof we hereby agree to accept, and to make the payments required as a result thereof. We agree to keep our Advance deposit intact as a Surplus for the payment of our proportion of losses and expenses, and to pay promptly all demands for monies to be used for the purposes set forth in this Agreement. Failure to pay promptly such demands shall be cause for legal enforcement of same at our expense, and our Attorney-in-Fact is specifically authorized to bring such proceedings in the name of The Southern Underwriters, or in its own name as Attorney-in-Fact, for Subscribers at The Southern Underwriters.'
"The advance deposit due by Mr. Andrus under the application was $250.00, which he paid to the agent which issued and delivered the policy to him, and which agent in turn paid the Southern Underwriters. The terms for which Mr. Andrus was insured under that original agreement was from September 7, 1937, to September 7, 1938, a term of one year. The Southern Underwriters was insolvent from December 31, 1936 to July 20, 1938, and was placed in the hands of a receiver, at which time there were claims against the Southern Underwriters of $114,148.83, and the only assets of the Southern Underwriters were $6,792.42, and that the advanced deposits referred to above amounted to $249,161.96, hence these deposits had they been maintained would have prevented the insolvency of the Southern Underwriters, and since they were not maintained by the Southern Underwriters, the receiver was authorized to institute suits against the subscribers for the amount. See Glenn H. McCarthy, Inc. v. Southern Underwriters, Tex.Civ.App.,192 S.W.2d 469, for a statement of the facts from which the foregoing is taken.
"Defendant denies liability on the following grounds:
"1. That the Southern Underwriters was insolvent at the time when it issued to defendant the workmen's compensation policy, and that the contract was not binding as there was no consideration flowing to defendant.
"2. That the Employer's Casualty Company took over the assets of the Southern Underwriters and assumed all of its liabilities, therefore, plaintiff as the receiver of the Southern Underwriters has no cause or right of action herein.
"3. That both the Southern Underwriters and the Employer's Casualty Company were represented in Shreveport by Victor P. Maynard with whom defendant dealt, and to whom the advance deposit and all premiums on policies were paid, and that subsequently the latter company failed and Victor P. Maynard made a final settlement with its receiver which was approved by the Court, and included all claims against defendant fordeposit premiums or premiums of any kind whatsoever, including the claim asserted in this suit, which settlement is pleaded in bar of the demand. *Page 806 
"1. Defendant cites no authority to the effect that a corporation or individual cannot make a valid contract while insolvent and we know of none. The insolvency referred to is a result of the non-action of the policyholders themselves. If they had complied with their agreement to keep the $250.00 deposits (or whatever deposit was required from each depositor) intact there would have been no insolvency.
"2. The receiver here is representing the creditors of the Southern Underwriters, for whose benefit the 'deposits' were to be kept intact. Mr. Andrus was under the obligation with other policy holders to see that these deposits were maintained, for the benefit of the claimants. Along came the Employer's Casualty Company and says, 'I will pay these creditors.' The evidence fails to show that they were so paid or that the creditors agreed to accept the Employers Casualty Company as their creditor, if, as stated by defendant that the Employers Casualty Company did agree to pay these claims and became insolvent. We think that both are legally liable to the receiver for the creditors. The Court so held in Williams v. Knox, Tex.Civ.App., 207 S.W.2d 151, wherein Williams was sued for his deposit, and the Court of Civil Appeals held him liable. Since it is not shown that the Employers Casualty, upon agreeing to pay the liabilities of the Southern Underwriters, secured the consent of the creditors of the latter to release the policyholders of the latter from liability under their agreement to keep their deposits intact, it appears that such policyholders are still liable to the claimants against the Southern Underwriters and upon making good their deposits they may claim a refund from the Employers Casualty Company on their assumption agreement.
"3. The evidence shows that Victor P. Maynard of Shreveport was the local agent of both the Southern Underwriters Corporation and the Employer's Casualty Company, that when the former failed all of their policies were re-written in the latter company and the accounts of the policyholders transferred over to the latter, and this was true with respect to the defendant here. Mr. Andrus had paid in his $250.00 deposit to Mr. Maynard, who in turn had settled with the Southern Underwriters, according to their custom and agreement, but at the end of the policy contract with Mr. Andrus a settlement was made with him by giving him credit on his 'premium' account for the $250.00 'deposit' account, which had the effect of withdrawing the 'deposit' made at the commencement of the relationship, so as matters thus stood Mr. Andrus did not have up any 'deposit' for the benefit of his and the Underwriter's claimants.
"Mr. Andrus is claiming the benefit of a settlement made between Mr. Maynard and the Employer's Casualty Company. We do not see how this can be claimed by Mr. Andrus, under the evidence in the case. We must bear in mind that there is a vast difference between the 'Deposits' required under the insuring agreement and the 'premiums' due on the pay-rolls each quarter. The evidence does not show that the controversy was between Mr. Maynard and the Employer's Casualty Company, but from the judgment approving the settlement made between them, it is said that the receiver's report reporting 'the settlement of an account captioned Premiums in Course of Collection Due by Victor P. Maynard * * *' for which Mr. Maynard was to pay $875.00 cash and the surrender of accounts receivable totaling $973.83 'for direct collection.' In the first place we note that the settlement referred to was for 'premiums in Course of Collection' and not 'policy deposits;' and in the second place, it is not shown the account of Mr. Andrus was included in the cash settlement or whether he was due any amount at the time for premiums, or if so, whether the amounts due by him was 'premium' or 'deposit' and surrendered to the Employer's Casualty Co. for 'direct collection.' Furthermore, the Southern Underwriters Corporation was not a party to that settlement and whatever it was for, is not binding on the latter.
"It has been argued on and off the record that to hold Mr. Andrus liable herein will likely cause him to pay the amount more than once and that may be true, however, he is not out anything so far. He made the deposit and then obtained credit on his *Page 807 
premium account to that extent, which, as stated, has the effect of withdrawing the deposit. Further, by the very terms of the agreement Mr. Andrus was both an insurer and an insured. He paid 'premiums' for his insurance coverage and he was to pay 'deposits' to cover his liability as an insurer, and we take it that it would work this way:
"All policyholders would put up the deposits as required by their respective agreements; that once each year, the Southern Underwriters would calculate the losses in excess of the premiums collected, take this loss out of the 'deposit' and then call on each policyholder to pay their proportion of the loss up to the amount of their original deposit, and from the cited cases it appears that the deposits were used and no effort made to have the policyholders renew their deposit, or if the effort was made, Mr. Andrus says that he has never paid or renewed his deposit, but on the contrary, received credit for same on his premium account. We are of the opinion that plaintiff is entitled to judgment, * * *."
The judgment appealed from is affirmed, with costs.